David Simantob, SBN 155790
  Email: David.Simantob@wilsonelser.com
Shannon L. Santos, SBN 260112
  Email: Shannon.Santos@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Tel.:  (213) 443-5100
Fax:  (213) 443-5101

*Attorneys for Plaintiff Hartford Accident and Indemnity Company*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| HARTFORD ACCIDENT AND INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CAPUCHIN FRANCISCAN ORDER OF CALIFORNIA,<br><br>Defendant. | Case No. 2:25-cv-01069<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Hartford Accident and Indemnity Company ("Hartford") hereby brings its Complaint for Declaratory Relief against Defendant Capuchin Franciscan Order of California ("Capuchins") and alleges as follows:

## INTRODUCTION

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201(a).

2. The Capuchins have been named as defendants in a number of lawsuits, alleging that the Capuchins are liable for abuse committed by a former member of the Capuchin order, Fr. Christopher Kearney (collectively "Underlying Lawsuits").

3. This dispute concerns whether, and the extent to which, the Capuchins are entitled to coverage for the Underlying Lawsuits under general liability insurance

policies that Hartford issued to the Capuchins (collectively "Policies").

4. On information and belief, the Capuchins assert that Hartford is obligated to provide coverage, up to its policy limits, for certain Underlying Lawsuits, which allege that Fr. Kearney committed acts of sexual abuse during Hartford's policy periods. Hartford disagrees, because the Underlying Lawsuits are not covered under the terms and conditions of the Hartford Policies.

5. Accordingly, Hartford seeks a determination of the parties' rights and obligations under the liability Policies with respect to the Underlying Lawsuits.

## PARTIES

6. Hartford is now and was at all relevant times a Connecticut corporation with its principal place of business in Connecticut. At all times mentioned in this Complaint, Hartford has been authorized to conduct the business of insurance in the State of California.

7. On information and belief, the Capuchin Franciscan Order of California is a not-for-profit corporation organized under the laws of the State of California and under the Internal Revenue Code § 501(c)(3). The Capuchins' principal place of business is located in Burlingame, California.

## JURISDICTION AND VENUE

8. This court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interests and costs.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the case concerns insurance coverage for the Capuchins, which was issued in this district, and because certain of the Underlying Lawsuits are filed within this district and arise out of facts and circumstances taking place within this district.

/ / /

/ / /

# GENERAL ALLEGATIONS

A. **The Policies**

10. Hartford issued general liability Policy No. 56 CBP 501219 to "Capuchin Franciscan Order of California dba St. Francis High School", which renewed annually and covered the period June 1, 1981 to June 1, 1984.

11. The Policies contain the "Casualty Insurance Provisions" coverage form [Form PPM-215-3] and the "Comprehensive-Plus General Liability Insurance" coverage form [Form L 3704-D], which include the following provisions:

> **I. BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE**
>
> **PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE**
>
> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> > bodily injury
> >
> > property damage
> >
> > personal injury or
> >
> > advertising injury
>
> to which this insurance applies caused by an occurrence and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury or damage … .
>
> ***
>
> **DEFINITIONS**
>
> ***bodily injury*** means bodily injury[,] sickness or disease sustained by any person which occurs during the policy period including death at any time resulting therefrom.
>
> ***

///

*occurrence* means an accident including continuous or repeated exposure to conditions which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*.

\*\*\*

## CONDITIONS

\*\*\*

**4. Insured's Duties in the Event of Occurrence[,] Claim or Suit**

(a) In the event of an *occurrence* written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time[,] place and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.

\*\*\*

(c) The *insured* shall cooperate with the company and upon the company's request assist in making settlements in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy ... .

**B.    The California Child Victims Act**

12.    In 2019, the California state legislature passed California Assembly Bill 218 into legislation, which established the California Child Victims Act ("CVA").

13.    The CVA extended the statute of limitations period for childhood sexual abuse claims and opened a three-year "window" from January 1, 2020, to December 31, 2022, during which survivors of childhood sexual abuse could file civil lawsuits against alleged perpetrators.

/ / /

14. The CVA applies to claims against institutions that may have enabled or failed to prevent abuse such as schools, religious organizations, and other entities for claims alleging negligence. It does not extend to claims based solely on theories of strict liability.

**C.   The Underlying Lawsuits**

15. Following enactment of the CVA, the Capuchins were named as defendants in numerous lawsuits, alleging child sexual abuse perpetrated by members of the Capuchin order and other individuals employed by the Capuchins, including the Underlying Lawsuits.

16. On information and belief, the abuse lawsuits asserted against the Capuchins, including the Underlying Lawsuits, allege that the Capuchins were negligent in their hiring, retention, and supervision of certain individuals who committed sexual abuse against the plaintiffs ("Underlying Plaintiffs").

17. On information and belief, Fr. Kearney was ordained as a member of the Capuchin Friar order and given priestly faculties in South Pasadena, California in 1968.

18. On information and belief, following his ordination, Fr. Kearney was given permanent assignment at St. Francis High School ("St. Francis"), located in La Cañada Flintridge, California.

19. On information and belief, St. Francis is a private Catholic school established in 1946 by the Capuchin Franciscan Friars. The Capuchins, on further information and belief, have operated St. Francis school from 1946 to the present.

20. On information and belief, the Capuchins employed and supervised Fr. Kearney for nearly 30 years during his time at St. Francis, where he served as an administrator, teacher, disciplinarian, and pastor from 1968 to approximately 1998.

21. On information and belief, the Underlying Lawsuits allege that Fr. Kearney exploited his authority in these roles to manipulate, control, and sexually abuse students.

///

22. On information and belief, the Underlying Plaintiffs generally allege Fr. Kearney would molest and abuse them under the guise of "horseplay," utilizing adolescent peer pressure and his educational authority to coerce the Underlying Plaintiffs into wrestling with him and touching his genitals. It is alleged that he would "challenge" the Underlying Plaintiffs to let him wrestle and sexually assault them. These incidents occurred regularly and openly on school grounds, during and after school hours, and during school related outings.

23. On information and belief, the Underlying Plaintiffs also allege that Fr. Kearney would engage with them inappropriately during weekend detention sessions. In his role as a disciplinarian, Fr. Kearney would pressure the Underlying Plaintiffs to take part in wrestling "challenges" as a way to be released from detention early.

24. On information and belief, a condition of the "challenge" often required Underlying Plaintiffs to enter a private room alone with Fr. Kearney and be told that if they managed to touch his genitals during the match, they would be allowed to leave. It is alleged that students who refused to participate were subjected to manual labor, prolonged detention hours, and other forms of punishment.

25. On information and belief, the Underlying Plaintiffs allege that during these and other incidents, Fr. Kearney sexually abused them.

26. On information and belief, the Underling Lawsuits allege that it was well known among the Capuchin clergy and staff that Fr. Kearney had been involved in extensive wrestling and physical contact with students, and, yet, they continued to allow Fr. Kearney to be employed as a teacher and administrator, where he would have access to minors.

27. On information and belief, the Underlying Lawsuits also allege there is evidence of the Capuchins' knowledge of Fr. Kearney's inappropriate and abusive conduct in his personnel file, which was kept and maintained by the Capuchins.

/ / /

/ / /

## FIRST CAUSE OF ACTION

**(Against Defendant for Declaratory Relief regarding Duty to Defend)**

28. Hartford incorporates and realleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

29. Hartford seeks a declaration that under the terms, conditions, and exclusions contained in the Policies, Hartford has no coverage obligations, either in whole or in part, with respect to or arising from the Underlying Lawsuits.

30. The Policies do not apply to *bodily injury* that is expected or intended "from the standpoint of the *insured*."

31. Additionally, California Insurance Code § 533 creates a statutory exclusion, read into all insurance policies, which bars coverage for a loss caused by the willful act of the insured. That exclusion bars all coverage when injury results from a purposeful or intentional action that the insured knows will result in harm.

32. To the extent the Capuchins intended or expected harm alleged in the Underlying Lawsuits, or such harm resulted from willful or intentional conduct by the Capuchins, any claims against Hartford for such liability are barred or limited, in whole or in part, by California Insurance Code § 533, California Civil Code § 1668, and/or other statutes and case law applying such statutes.

33. An actual and justiciable controversy exists regarding whether there is coverage for the Underlying Lawsuits under the Policies, because the alleged injury: (a) was not caused by an "occurrence"; (b) was not an "accident"; (c) was expected or intended by the Capuchins; and/or (d) is barred from coverage pursuant to California Insurance Code § 533.

34. Hartford is entitled to a declaration that it has no coverage obligations with respect to the Underlying Lawsuits, because they allege harm from sexual abuse (i) that was not accidental; (ii) that was expected or intended; and/or (iii) that resulted from willful or intention conduct within the meaning of California Insurance Code § 533.

/ / /

## SECOND CAUSE OF ACTION

**(Against Defendant for Declaratory Relief regarding Duty to Defend)**

35. Hartford incorporates and realleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

36. The Policies contain numerous conditions to coverage, including that covered injury must take place during the Hartford policy period and that the *insured* must perform its obligations under the Policies, including the duty to cooperate with Hartford and the duty to provide timely notice.

37. On information and belief, one or more of the Underlying Lawsuits arises out of injury, or alleged injury, that took place outside of the Hartford policy periods.

38. Also on information and belief, the Capuchins have failed to perform their obligations under the conditions of the Policies.

39. An actual and justiciable controversy exists regarding whether there is coverage for the Underlying Lawsuits under the Policies because there is no coverage for injury that occurs outside the Policies or that otherwise does not come within the terms and conditions of the Policies.

40. Hartford is entitled to a declaration that it has no coverage obligation with respect to the Underlying Lawsuits under the Policies.

## THIRD CAUSE OF ACTION

**(Against Defendant for Declaratory Relief regarding Right of Reimbursement)**

41. Hartford hereby incorporates and realleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

42. Hartford's acceptance of the Capuchins' defense of the Underlying Lawsuits was pursuant to a reservation of rights, including the right to seek reimbursement of amounts spent in defense of uncovered claims pursuant to *Buss v. Super. Ct.*, 16 Cal. 4th 35 (1997) and *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643 (2005).

/ / /

43. Hartford has incurred attorneys' fees and costs associated with the Capuchins' defense of the Underlying Lawsuits, including in defense of uncovered claims. The amount Hartford has incurred in defense of the Capuchins on uncovered claims exceeds the jurisdictional limit of this Court under diversity jurisdiction.

44. There exists a genuine and bona fide dispute and an actual controversy and disagreement between Hartford and the Capuchins regarding whether Hartford has a right to reimbursement of attorneys' fees and costs incurred in defense of uncovered claims on behalf of the Capuchins in the Underlying Lawsuits under the Policies.

45. Hartford contends it has a right to reimbursement of attorneys' fees and costs incurred in defense of uncovered claims on behalf of the Capuchins in the Underlying Lawsuits under the Policies. Upon information and belief, the Capuchins dispute this contention.

46. In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the Policies, certain attorneys' fees and costs were incurred in defense of uncovered claims for the following reasons:

   a. The Underlying Lawsuits do not allege *bodily injury* caused by an *occurrence* to trigger coverage under the Policies;

   b. The Underlying Lawsuits allege injury that occurred outside the period covered by the Policies;

   c. The Policies do not cover willful acts by the *insured*;

   d. The Capuchins failed to comply with the conditions under the Policies to give timely notice of a claim; and

   e. The Capuchins failed to comply with the conditions under the Policies to cooperate with Hartford in defense of the Underlying Lawsuits.

47. Hartford also relies upon all additional terms, definitions, exclusions, conditions, and endorsements in the Policies not specifically identified herein that potentially limit or preclude its duty to defend the Capuchins in the Underlying

Lawsuits.

48. Hartford seeks a declaration from this Court that Hartford has the right to reimbursement of attorneys' fees and costs incurred in defense of uncovered claims on behalf of the Capuchins in the Underlying Lawsuits under the Policies.

## FOURTH CAUSE OF ACTION

**(Against Defendant for Declaratory Relief regarding Duty to Indemnify)**

49. Hartford hereby incorporates and realleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

50. There exists a genuine and bona fide dispute and an actual controversy and disagreement between Hartford and the Capuchins regarding whether Hartford has a duty to indemnify the Capuchins in connection with the Underlying Lawsuits.

51. Hartford contends it has no duty to indemnify the Capuchins in the Underlying Lawsuits under the Policies. Upon information and belief, the Capuchins dispute this contention.

52. In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the Policies, Hartford does not owe a duty to indemnify the Capuchins in the Underlying Lawsuits under the Policies or applicable law for the following reasons:

   a. The Underlying Lawsuits do not allege *bodily injury* caused by an *occurrence* to trigger coverage under the Policies;

   b. The Underlying Lawsuits allege injury that occurred outside the period covered by the Policies;

   c. The Policies do not cover willful acts by the *insured*;

   d. The Capuchins failed to comply with the conditions under the Policies to give timely notice of a claim; and

   e. The Capuchins failed to comply with the conditions under the Policies to cooperate with Hartford in defense of the Underlying Lawsuits.

53. Hartford also relies upon all additional terms, definitions, exclusions, conditions, and endorsements in the Policies not specifically identified herein that potentially limit or preclude its duty to indemnify the Capuchins in the Underlying Lawsuits.

54. Hartford seeks a declaration from this Court that Hartford has no duty to indemnify the Capuchins in the Underlying Lawsuits under the Policies.

## **PRAYER FOR RELIEF**

WHEREFORE, Hartford prays for judgment as follows:

1. That the Court determine, decree, and adjudge that Hartford has no duty to defend the Capuchins in the Underlying Lawsuits under the Policies;

2. That the Court determine, decree, and adjudge that Hartford has the right to reimbursement of all attorneys' fees and costs incurred in defense of uncovered claims on behalf of the Capuchins in the Underlying Lawsuits under the Policies;

3. That the Court determine, decree, and adjudge that Hartford has no duty to indemnify the Capuchins in the Underlying Lawsuits under the Policies;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court deems fit and proper under the circumstances and evidence.

Dated: February 7, 2025   WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: */s/ Shannon L. Santos*
David Simantob
Shannon L. Santos
*Attorneys for Plaintiff Hartford Accident and Indemnity Company*

///

///

## DEMAND FOR JURY TRIAL

Hartford requests a trial by jury on all claims so triable.

Dated: February 7, 2025

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: */s/ Shannon L. Santos*
David Simantob
Shannon L. Santos
*Attorneys for Plaintiff Hartford Accident and Indemnity Company*